EDWARD G. MARSHALL, Petitioner, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Clark; and THE HONORABLE J. CHARLES THOMPSON, District Judge, Respondents, and CITY OF HENDERSON and HENDERSON POLICE DEPARTMENT, Real Parties in Interest.

No. 21912

MARY MAZIAR, Appellant, v. THE CITY OF HENDERSON and HENDERSON POLICE DEPARTMENT; CHARTER HOSPITAL OF LAS VEGAS, INC., a Corporation, MERCY AMBULANCE, INC., a Corporation, Respondents.

No. 22196

EDWARD G. MARSHALL, Petitioner, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Clark; and THE HONORABLE J. CHARLES THOMPSON, District Judge, Respondents, and MERCY AMBULANCE, INC., Real Party in Interest.

No. 22242

July 10, 1992          836 P.2d 47

[Rehearing denied November 3, 1992]

*Edward G. Marshall,* Las Vegas, for Petitioner Marshall and Appellant Maziar.

*Rex Bell,* District Attorney, Clark County, for Respondent County of Clark.

*Shauna Hughes,* Henderson City Attorney, and *Ronald Sailon,* Deputy City Attorney, Henderson, for Real Parties in Interest and Respondent City of Henderson and Henderson Police Department.

*Hafen & Mayor,* Las Vegas, for Respondent Charter Hospital of Las Vegas, Inc.

*Beckley, Singleton, DeLanoy, Jemison & List* and *Daniel F. Polsenberg,* Las Vegas, for Respondent and Real Party in Interest Mercy Ambulance, Inc.

# OPINION

*Per Curiam:*

## Facts

These consolidated matters involve two petitions for writs of certiorari challenging district court orders imposing sanctions against petitioner Edward G. Marshall and an appeal from orders of the district court, certified as final pursuant to NRCP 54(b), granting summary judgment in favor of respondents.

On June 21, 1988, Mary Maziar (Maziar) was served at home with divorce papers initiated by her husband, Paul. When Maziar threatened to shoot Paul, he called Charter Hospital (Charter) and asked for a clinical evaluation team to come to their residence. Henderson police stood by while the Charter personnel performed the evaluation. Registered Nurse Jean Richardson filled out an application for the emergency hospitalization of a mentally ill person, in which she wrote that she had reason to believe that Maziar was mentally ill. Nurse Richardson also stated that Maziar was likely to injure someone if she was not immediately detained. Her report further stated that plants had been thrown around the house, that doors in the home had been torn off of their hinges, and that Maziar had left her children unattended outside.

After the evaluation and the decision to commit Maziar, the Charter personnel summoned Mercy Ambulance (Mercy) to the home and instructed Mercy to take Maziar to the Charter Hospital Psychiatric Unit. One of the Mercy attendants told Maziar that if she did not voluntarily go with them, she would have to be physically restrained. Maziar went with Mercy and was admitted to Charter that morning. That same afternoon Dr. Brewer, a

psychiatrist, examined Maziar and noted that she presented a danger to others and had a history of mental illness. Charter's records indicate that Maziar was placed on a forty-eight hour hold and was discharged at her request only one day later against medical advice.

On June 20, 1990, Maziar filed a complaint against her husband, Charter, the City of Henderson and Henderson Police Department (the City), the Las Vegas Metropolitan Police Department, the City of Las Vegas, Clark County, and Mercy. She alleged, inter alia, that respondents entered forcibly into her home and caused her to be hospitalized against her will. On August 29, 1990, Charter filed a timely answer to the complaint, and on October 30, 1990, Charter filed a motion for summary judgment in which the hospital argued that it was empowered to detain Maziar, pursuant to NRS 433A.150,[2] for a period not in excess of seventy-two hours, if she presented a clear and present danger to herself or others. On February 25, 1991, the district court granted Charter's motion for summary judgment, and the case was dismissed with prejudice with respect to Charter.

On September 24, 1990, Paul Maziar filed bankruptcy. On November 19, 1990, the district court dismissed the lawsuit as to the City of Las Vegas and Clark County and gave Maziar an opportunity to file an amended complaint within twenty days. On December 10, 1990, Maziar filed an amended complaint against the City in which she alleged two causes of action: (1) false imprisonment,[3] and (2) invasion of right of privacy. On January 18, 1991, the district court granted the City's motion to dismiss, holding that the amended complaint failed to state a claim for

---

[2]NRS 433A.150, "Detention for evaluation, observation and treatment; limitation on time," provides in part:

    1. Any mentally ill person may be detained in a public or private mental health facility or hospital under an emergency admission for evaluation, observation and treatment subject to subsection 2.

    2. Except as otherwise provided in subsection 3, a person admitted to a mental health facility or hospital under subsection 1 must not be detained in excess of 72 hours, including Saturdays and Sundays, from the time of his admission unless within that period a written petition for an involuntary court-ordered admission has been filed with the clerk of the district court pursuant to NRS 433A.200.

[3]The amended complaint stated, under the first cause of action, that:

    By reason of the foregoing . . . acts . . . MAZIAR suffered great injury to her peace, happiness and personal feelings. She suffered further injury by reason of her illegal confinement, actual deprivation of bodily freedom, mental anguish, aggravated concerns of anguish for her children including a newly born baby, emotional distress, physical torment, shame, humiliation, embarrassment, fees of legal counsel, and other injuries, all to her great loss and damage in a sum exceeding $10,000.

relief against the City. The district court also held that, inasmuch as Maziar had not alleged malicious conduct or bad faith on the part of respondents, they were entitled to immunity under NRS 433A.740,[4] and that Maziar's amended complaint failed to state a claim for which relief may be granted.

On February 25, 1991, the district court imposed Rule 11 sanctions of $2,500.00 in attorney's fees against Maziar's attorney, Edward Marshall, to be paid to the City. On March 7, 1991, the court treated Mercy's NRCP 12(b)(5) motion to dismiss as one for summary judgment and granted it under Rule 56. The court again found Marshall in violation of Rule 11 and awarded sanctions of $2,500.00 against Marshall payable to Mercy. The district court certified its order as a final judgment pursuant to NRCP 54(b). On march 26, 1991, Maziar filed her notice of appeal. On March 4 and June 10, 1991, Marshall filed petitions for writs of certiorari and other extraordinary relief with this court. By order of this court of July 30, 1991, Maziar's appeal was consolidated with Marshall's petitions for certiorari.

NRCP 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law and no genuine issue remains for trial. In deciding the propriety of summary judgment, all evidence favorable to the non-moving party is accepted as true. Nehls v. Leonard, 97 Nev. 325, 328, 630 P.2d 258, 260 (1981). We will discuss the propriety of summary judgment in favor of Charter and Mercy separately.

*Charter Hospital.*

Charter argues that there is no genuine issue of material fact involving the hospital and that summary judgment was appropriate. Charter notes that:

(a) It was summoned to the Maziar residence by Mr. Maziar, who was presumably one of the owners of the residence;

(b) Upon arrival of Charter personnel, the police were already present;

(c) Maziar, who was inside the house, had abrasions on her body and the house was in disarray;

(d) The Maziar children were outside in the backyard because they feared a confrontation with their mother;

---

[4]NRS 433A.740, "Liability of public officer or employee," provides:

> Any public officer or employee who transports or delivers or assists in transporting or delivering or detains or assists in detaining any person pursuant to the provisions of this chapter shall not be rendered civilly or criminally liable thereby unless it is shown that such officer or employee acted maliciously or in bad faith or that his negligence resulted in bodily harm to such person.

(e) Maziar admitted that she was shocked and angry at the time of the arrival of the Charter personnel;

(f) Nurse Richardson found that, in good faith, she could not walk away from the situation, and that Maziar was not taking her psychiatric medications;

(g) Maziar was periodically taking approximately nineteen medications, many of which were designed to relieve pain and control emotion;

(h) Dr. Brewer, a psychiatrist, stated in his emergency admission certificate application that he felt she "presents [a] danger to others at this time."

(i) In her own affidavit, Maziar suggests that it was "unfortunate" that Charter was "suckered into" coming into the Maziar residence by her husband.

NRS 433A.115 defines a "mentally ill person" in part to mean a person who presents "a clear and present danger of harm to himself or others." In this case, both a certified nurse and psychiatrist have indicated that Maziar presented a danger to others. We conclude that such certification was reasonable, especially considering the fact that Maziar was a psychiatric patient at the time and was not taking her prescribed medications. We conclude that the application for emergency admission was appropriate and that summary judgment was proper.

*Mercy Ambulance.*

Mercy argues that the actions of its personnel were authorized by NRS 433A.160 as an emergency admission.[5] Nurse Richardson took Maziar into custody, applied for her admission to Charter, and arranged for Mercy to transport her to Charter. At Charter, a psychiatrist evaluated her and approved the emergency admission because of the likelihood that she would harm others. *See* NRS 433A.160(5) and NRS 433A.170. We conclude that Mercy was authorized under the statute to transport Maziar to the hospital, that it had no discretion to conduct its own evaluation,

---

[5]NRS 433A.160(1), "Procedure for admission," provides:

Application for an emergency admission of an allegedly mentally ill person for evaluation and observation may only be made by an accredited agent of the department, an officer authorized to make arrests in the State of Nevada or a physician, psychologist, social worker or registered nurse. The agent, officer, physician, psychologist, social worker or registered nurse may take an allegedly mentally ill person into custody without a warrant to apply for emergency admission for evaluation, observation and treatment under NRS 433A.150 and may transport the person or arrange the transportation for him with a local law enforcement agency to a public or private mental health facility for that purpose.

and that Maziar's appeal of the order of summary judgment in favor of Mercy is therefore meritless.

*The City of Henderson and the Henderson Police Department.*

Maziar claimed that the City's police officers falsely imprisoned her. The district court dismissed the complaint against the City with prejudice, holding that the respondents were entitled to immunity under NRS 433A.470 and that the amended complaint failed to state a claim for which relief could be granted.

The police officers responded to a call for assistance and acted under the belief that Maziar was mentally ill and in need of confinement. NRS 433A.740 provides immunity "unless it is shown that such officer or employee acted maliciously or in bad faith or that his negligence resulted in bodily harm to such person." Maziar did not allege negligence causing bodily harm, bad faith, or malice in her amended complaint, even though the district court gave her the opportunity to address the issue of legal cause or justification. *See* Garton v. City of Reno, 102 Nev. 313, 720 P.2d 1227 (1986) (evidence focusing on procedural irregularities with respect to plaintiff's arrest did not make out prima facie case of false arrest or false imprisonment, in light of lack of evidence addressing issue of legal cause or justification). We conclude that NRS 433A.740 provides qualified immunity which protects these respondents, and that Maziar's failure to allege negligence, bad faith, or malice is fatal to her complaint.

*Sanctions.*

The district court imposed Rule 11 sanctions against Marshall to be paid to the City as well as Mercy. While Rule 11 sanctions should be imposed for frivolous actions, to do so in this case would have a chilling effect, since Marshall attempted in good faith to have the district court recognize a new cause of action for invasion of the right to privacy. While we do not agree that such a cause of action arises under these facts, we do not wish to discourage attorneys from exercising imagination and perseverance on behalf of their clients, particularly where a client has appeared to have been victimized. In fact, Maziar had what appears to be a viable cause of action against her ex-husband until he went bankrupt, and it may well be that Marshall believed in good faith that other parties were also responsible for the treatment Maziar received. Rule 11 sanctions are not intended to chill an attorney's enthusiasm or creativity in reasonably pursuing factual or legal theories, and a court should avoid employing the wisdom of hindsight in analyzing an attorney's action at the time

of the pleading. *See* Marco Holding Co. v. Lear Siegler, Inc., 606 F.Supp. 204, 211 (N.D.Ill. 1985). Accordingly, we conclude that the district court abused its discretion in issuing sanctions against attorney Marshall.

## Conclusion

Qualified statutory immunity for certain officials was created for a situation such as this, where police, hospital, and ambulance personnel respond to a call in a potentially life-threatening situation which involves a mentally ill person. Because the complaint contained no allegations of bad faith, malice, or negligence causing bodily harm, we conclude that summary judgment as to all of the respondents was proper, and we affirm the decision of the district court on Docket Number 22196.

We treat Marshall's petitions for writs of certiorari, Docket Numbers 21912 and 22242, as petitions for writs of mandamus. A writ of mandamus will issue to control a court's arbitrary or capricious exercise of discretion. *See* Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 637 P.2d 534 (1981). We grant the petitions and direct the clerk of this court forthwith to issue writs of mandamus in Docket Numbers 21912 and 22242 commanding the district court to vacate its orders sanctioning attorney Marshall.

SPRINGER, ROSE, STEFFEN and YOUNG, JJ., and BLAKE, D. J.,[6] concur.

---

[6]The Honorable Archie E. Blake, Judge of the Third Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE JOHN C. MOWBRAY, Chief Justice. Nev. Const., art. 6, § 4.